Philip H. **BARTELS**

v.

**INTERNATIONAL COMMODITIES CORPORATION et al.**

Civ. No. B-77-15.

United States District Court,
D. Connecticut.

Aug. 15, 1977.

Richard A. Williams, Greenwich, Conn., for plaintiff.

Allan R. Johnson, Westport, Conn., Herbert I. Rothbart, Chicago, Ill., for defendants.

## RULING ON MOTION TO DISMISS

NEWMAN, District Judge.

This is an action alleging fraud in connection with certain transactions in commodity options.[1] Jurisdiction over federal claims is invoked under federal securities and commodities statutes; diversity jurisdiction and pendent jurisdiction are alleged over several state law causes of action. Defendants have moved to dismiss for lack of jurisdiction, or in the alternative, to change venue. Plaintiff has opposed the motion solely on the ground that defendants are in default for failure to answer. Neither side has responded to the other side's arguments. The Court has thus had to proceed without the issues being neatly joined, and, as sometimes happens, has reached a resolution on grounds different from those urged by either side.

### Effect of Defendants' Default

Of the six defendants named in the complaint, only two—the movants herein—were served. Defendant International Commodities Corporation was served on January 21, 1977, and when it failed to plead or otherwise defend, its default was entered upon plaintiff's request. Defendant Weitman was served on February 23, 1977. Plaintiff requested the clerk to enter Weitman's default as well, but default was never entered, possibly because the instant motion was received shortly after the request.[2] Plaintiff argues that whether or not default has been formally entered, the defendants are in default and can obtain a ruling on their motion to dismiss only after first ob-

---

1. For a discussion of the commodity options trade including options traded on London exchanges ("London options"), see *British American Commodity Options Corp. v. Bagley*, 552 F.2d 482 (2d Cir. 1977). The transactions alleged in the complaint involved London options.

2. Defendants' original attempt to file their motion was unsuccessful because their counsel was not a member of the bar of this Court, and the clerk accordingly returned the motion unfiled.

taining a favorable ruling on a motion to set aside the default pursuant to Rule 55(c).

Defendants have neither moved to set aside the default nor moved for an enlargement of time after the expiration of the period for pleading under Rule 6(b)(2). Had they taken either of these courses, they would have had the burden of showing an excuse for their failure to plead, but the burden would have been a light one which could have been met by a showing of excusable neglect.[3]

■ In the absence of such a motion, the first issue is whether the Court has the authority *sua sponte* to set aside default or enlarge time. Plaintiff has relied on *Orange Theatre Corp. v. Rayherstz Amusement Corp.*, 130 F.2d 185 (3d Cir. 1942), for the proposition that the Court lacks such authority. In that case the Court of Appeals reversed the District Court for having granted defendants' motion to dismiss for improper venue without first having extended the time for pleading. The reasoning of the *Rayherstz* opinion does not apply where the defendants' objection goes to jurisdiction rather than venue, as the *Rayherstz* court itself recognized in a later appeal reported at 139 F.2d 871 (3d Cir. 1944), *cert. denied*, 322 U.S. 740, 64 S.Ct. 1057, 88 L.Ed. 1573 (1944), discussing the very issue raised herein. If a court has never acquired jurisdiction over a defendant or the subject matter, failure to abide by time limits is of no consequence whatever, since any judgment ultimately entered is void and subject to vacation or collateral attack. While both personal jurisdiction and venue objections can be waived,[4] a defendant hardly waives a jurisdictional objection by the mere passage of time. Absence of waiver is supported in this case by the fact that the first and only action taken by defendants was to move—albeit after the expiration of the time period established by the Rules—to dismiss for lack of jurisdiction.

■ Accordingly, the fact of default does not preclude consideration of defendants' objections to this Court's jurisdiction.[5] To keep the pleadings orderly, the default already entered is hereby set aside.

### Jurisdiction

Under Rule 4(e) of the Federal Rules of Civil Procedure, there are two ways to effect service of process upon a nonresident defendant. If a statute of the United States provides for service upon a nonresident, service may be made under the circumstances and in the manner prescribed by the statute or court order under the statute. Alternatively, if a statute or rule of court of the forum state provides for nonresident service, service may be made under the circumstances and in the manner prescribed in that statute or rule.

In the present case service could possibly have been made under the latter portion of Rule 4(e) by following the provisions of the Connecticut long-arm statutes, Conn.Gen. Stat. § 33–411 (corporate defendants) or § 52–59b (individual or partnership defendants). But plaintiff failed to comply with these statutes. The procedure under § 33–411 is to leave two copies of the document to be served together with the appropriate fee at the office of the secretary of the state, who files one copy and forwards the other by registered or certified mail to the corporation at its last known address. Under § 52–59b one copy is served on the secretary of the state together with the

---

3. Contrary to plaintiff's argument, the showing required to set aside a default is not the same as the showing required to set aside a default judgment, but is substantially less. *See* 6 Moore's Federal Practice ¶ 55.10[2].

4. Apparently the plaintiff in *Rayherstz* thought that the defendants had in fact waived their venue objection by stipulating with the plaintiff to extend the time for answer. 130 F.2d at 186.

5. Consideration of the motion to dismiss would be proper even if the jurisdictional objections did not ultimately prevail. Given the strong policy in favor of deciding suits on the merits rather than by default, 6 Moore's Federal Practice ¶ 55.10[1], it would be anomalous to hold defendants disabled from defending the suit on the merits because they relied in good faith on a non-frivolous but erroneous view of the law on jurisdiction. *See Latini v. R. M. Dubin Corp.*, 90 F.Supp. 212 (N.D.Ill.1950).

appropriate fee, and a second copy with an endorsement of the service upon the secretary is sent to the defendant at his last known address by registered or certified mail. Because plaintiff had a federal marshal attempt to serve the defendants in Illinois in place of service "under the circumstances and in the manner prescribed" by either of the Connecticut long-arm statutes as required under this provision of Rule 4(e), long-arm jurisdiction has not been obtained. Thus there is no need to consider defendants' constitutional argument that their contacts with the state of Connecticut were insufficient to permit the assertion of long-arm jurisdiction.

The alternative to state long-arm service is service under one of the federal provisions for nationwide service of process. The federal statutes invoked in the complaint contain such provisions,[6] and if sufficient claims were alleged under these statutes, the exercise of pendent jurisdiction over the related state claims might well be appropriate.[7]

■ The difficulty with relying on the nationwide service of process provisions of the federal securities laws is that since the enactment of the Commodity Futures Trading Commission Act of 1974, trading in commodity options is not subject to a private cause of action under the securities laws. For transactions prior to the enactment of the new commodities legislation, there is a clear split in authority over whether commodity options are even "securities" within the meaning of either the Securities Act of 1933 or the Securities Exchange Act of 1934. Compare *Securities and Exchange Commission v. American Commodity Exchange*, 546 F.2d 1361 (10th Cir. 1976), with *Glazer v. National Commodity Research and Statistical Service, Inc.*, 547 F.2d 392 (7th Cir. 1977), aff'g, 388 F.Supp. 1341 (N.D.Ill.1974). Our Circuit has not had occasion to consider this issue. See *British American Commodity Options Corp. v. Bagley*, 552 F.2d 482 at 486 n. 7 (2d Cir. 1977).

But whatever securities act claims plaintiff may have had prior to 1974, enactment of the Commodity Futures Trading Commission Act ("the Act" or "the Commodity Act"),[8] has most likely removed commodity options from the coverage of the securities acts and has surely removed them from an implied private cause of action under these acts. Congress clearly was dissatisfied with the limited success of attempts to regulate commodity options transactions under existing securities and commodities legislation. It dealt with this dissatisfaction, which is reflected at numerous points in the legislative history,[9] by establishing an independent regulatory agency, the Commodity Futures Trading Commission ("Commodity Commission"), to regulate commodities transactions including transactions in commodity options. It set up a special administrative reparations procedure under which an injured customer can take his complaint before the Commodity Commission and obtain an order requiring the respondent to pay damages.[10] The Commission's reparations orders are reviewable in the Courts of Appeals and enforceable by the District Courts.

---

**6.** These provisions are § 22 of the Securities Act of 1933, 15 U.S.C. § 77v; § 27 of the Securities Exchange Act of 1934, 15 U.S.C. § 78aa; and § 6c of the Commodity Futures Trading Commission Act of 1974, 7 U.S.C. § 13a–1.

**7.** Compare *Robinson v. Penn Central Co.*, 484 F.2d 553 (3d Cir. 1973), with *Ratner v. Scientific Resources Corp.*, 53 F.R.D. 325 (S.D.Fla. 1971), *appeal dismissed*, 462 F.2d 616 (5th Cir. 1972); see 2 Moore's Federal Practice ¶ 4.33 n. 3.3.

**8.** Pub.L. No. 93–463, 88 Stat. 1389 (1974), codified at 7 U.S.C. § 1 *et seq.*

**9.** S.Rep.No. 93–1131, 93d Cong., 2d Sess. (1974), reprinted at 1974 U.S. Code Cong. & Admin.News, pp. 5843, 5858–60; H.R.Rep.No. 93–975, 93d Cong., 2d Sess. 36–53 (1974); Statement by Chairman Talmadge on Consideration of the Conference Report on H.R. 13113, Oct. 10, 1974, in Senate Committee Print, The Commodity Futures Trading Commission Act of 1974, 93d Cong., 2d Sess. 6 (1974) (options trading "is now poorly regulated, if it is regulated at all."); *see British American Commodity Options Corp. v. Bagley, supra*, 552 F.2d at 485 n. 6.

**10.** *See* 7 U.S.C. § 18.

Within its own sphere as defined by the Act, the Commodity Commission now has exclusive jurisdiction.[11] Whatever authority the Securities and Exchange Commission previously exercised to attempt to control commodity options trading has been unequivocally ended by Congress, except as necessary to conclude proceedings begun before the Commodity Commission came into existence.[12] And whatever private right of action might have been available under S. E. C. Rule 10b–5 prior to the Act for a customer injured in a commodity options transaction has now been clearly displaced by the new customer reparations procedure. The implied private right of action under Rule 10b–5, though enunciated by the courts rather than by Congress explicitly, is a matter of statutory construction. By enacting the Commodity Futures Trading Commission Act, Congress has made clear that it does not intend the securities laws to apply to commodity transactions. In fact, the legislative history specifically notes:

> Often erroneously viewed as twins, there is little correlation in theory or in fact between the regulation of futures trading and the regulation of securities transactions. Futures trading regulation is essentially a regulation of a marketing device, that is, a contract right which is terminable at a time certain, for mainly agricultural commodities while the SEC regulates the handling of certificates of tangible ownership which are permanent in nature.

**11.** 7 U.S.C. § 2, as amended by § 201(b) of the Act, provides in part that "the Commission shall have exclusive jurisdiction with respect to accounts, agreements (including any transaction which is of the character of, or is commonly known to the trade as, an 'option . . ')."

**12.** Section 412 of the Commodity Act provides that pending proceedings "shall not be abated by reason of any provision of this Act." In *Securities and Exchange Commission v. American Commodity Exchange, Inc., supra*, the Tenth Circuit held that the exclusive jurisdiction provision of the Commodity Act did not divest the S. E. C. of jurisdiction over proceedings already pending when the Act went into effect. *Cf. Securities and Exchange Commis-*

. . . [T]he handling of devices such as options [is], and should remain, entirely different within the respective spheres of regulation.

H.R.Rep. No. 93–975, 93d Cong., 2d Sess. 71 (1974). In the face of this clear statement of legislative intent, it cannot be maintained, after enactment of the Commodity Act, that a commodity options customer has a private right of action under S. E. C. Rule 10b–5.[13]

Significantly, by the time of the plaintiff's transactions in October of 1975 the Commodity Commission had already promulgated its own anti-fraud rules on options similar to S. E. C. Rule 10b–5. See 17 C.F.R. § 30.01, effective June 24, 1975. When it proposed these rules, the Commission noted a recent Congressional reminder that unless the Commission acted quickly, there would be a gap in the regulation of options transactions. 40 Red.Reg. 18187 (Apr. 25, 1975), quoting H.R.Rep. No. 94–122, 94th Cong., 1st Sess. 8 (1975).[14] See also *British American Commodity Options Corp. v. Bagley, supra*, 552 F.2d at 491. Congress would not have urged haste upon the Commodity Commission if it had thought that S. E. C. Rule 10b–5 already filled the regulatory gap. This is yet another indication that Congress did not intend Rule 10b–5, or any other provision of the federal securities acts, to give the plaintiff a private right of action. Thus, no valid claim for relief has been stated under these statutes.

*sion v. Univest, Inc.*, 405 F.Supp. 1057, 410 F.Supp. 1029 (N.D.Ill.1976), 556 F.2d 584 (7th Cir.)

**13.** *Cf. Califano v. Sanders*, 430 U.S. 99, 107, 97 S.Ct. 980, 51 L.Ed.2d 192 (1977), considering the effect of Congressional attention to a specific problem in enacting one statute as a guide to Congressional intent in construing an earlier, broader statute.

**14.** The reminder came in the context of the passage of a joint resolution extending the effective date of certain provisions of the Act. *See* Pub.L.No. 94–16 (H.J.Res. 335), 89 Stat. 77 (1975).

Nor has a valid claim been stated under the 1974 Commodity Act. A defrauded plaintiff has no private right of action under this statute until he has invoked the Commodity Commission's reparations procedure. An order in his favor from the Commission would be enforceable against the defendants in federal court, but there is no private right of action before pursuing the administrative remedy.[15]

Thus, the nationwide service of process provisions of the federal securities acts and the Commodity Act do not help this plaintiff since he has not stated valid claims for relief under any of these statutes. And nationwide service of process cannot be used to acquire *in personam* jurisdiction over the defendants for claims cognizable only in the exercise of diversity jurisdiction. See *Hitchcock v. DeBruyne*, 377 F.Supp. 1403 (D.Conn.1974); *Holmberg v. Williamson*, 135 F.Supp. 493 (S.D.N.Y. 1955). The state law claims will be cognizable in diversity, if ever, only after proper long-arm service consistent with Rule 4(e) and the state long-arm statutes. At that point there will arise the issue of whether defendants had sufficient contacts with Connecticut to satisfy the due process clause and whether the dispute is within the primary jurisdiction of the Commodity Commission. *Cf. Nader v. Allegheny Airlines*, 426 U.S. 290, 96 S.Ct. 1978, 48 L.Ed.2d 643 (1976). With the federal claims failing at the outset, pendent jurisdiction over state claims is inappropriate. Accordingly, the complaint is dismissed.

---

**15.** Jurisdiction and venue would be governed by 7 U.S.C. § 18(f). Jurisdiction and venue over a suit by the Commodity Commission to enjoin violations of the Act would be governed by 7 U.S.C. § 13a–1. The nationwide service of process provision of that section does not help the plaintiff here, because it applies by its terms only to actions brought by the Commission, in contrast to the general language of the corresponding provisions of the securities acts. Section 13a–1 reinforces the conclusion that enforcement of the Act has been committed by Congress to the Commodity Commission, to the exclusion of the private suitor in an independent district court action.