**Walter WITZEL, Plaintiff,**

v.

**CHARTERED SYSTEMS CORPORATION OF NEW YORK, LTD., a New York Corporation, Frank T. Genovese, Jr., Richard D. Postrel, John Doe I through X, Jane Doe XI through XX, Richard Roe XXI through XXXV and Mary Roe XXXVI through L, Individually, Defendants.**

**Civ. No. 4–79–610.**

United States District Court,
D. Minnesota,
Fourth Division.

May 27, 1980.

Daniel P. Taber, Minneapolis, Minn., for plaintiff.

Eric W. Valen, Richard A. Saliterman Law Firm, Minneapolis, Minn. and Jeffrey S. Rosen, Stoppelman & Rosen, Washington, D. C., for defendant Chartered Systems Corp. of New York, Ltd.

## MEMORANDUM AND ORDER

MacLAUGHLIN, District Judge.

This action was instituted by Walter Witzel, a purchaser of London Commodity Options, to recover the sum of $19,300 which plaintiff alleges he lost as a result of fraudulent omissions and misrepresentation made in connection with solicitation efforts by defendant's agents. The plaintiff also seeks to recover attorneys' fees and costs should he prevail on certain state law claims. According to plaintiff's complaint, defendant's agents solicited him by phone and by mail in Minnesota to purchase certain commodity options offered for sale through London exchanges and as a result of defendant's misrepresentations and fraudulent omissions, he purchased sugar and coffee options which ultimately became worthless. Counts 1 through 6 of plaintiff's complaint are premised on violations of certain regulations promulgated by the Commodities Futures Trading Commission (CFTC) pursuant to the Commodity Exchange Act (the Act), which are basically antifraud regulations. The defendant is a registered futures commission merchant under the Act. The remaining counts (7 through 16) are premised on common law theories such as fraud, breach of fiduciary duty and negligence, and on alleged violations of certain Minnesota statutes (Minn. Stat. §§ 325.905; 325.79, subd. 1; 325.907; and 80A.01).

This matter is before the Court on the motion of defendant Chartered Systems Corporation of New York, Ltd. (Chartered Systems) to dismiss plaintiff's complaint for failure to state a claim upon which relief may be granted. The defendant makes a number of arguments. First, defendant contends that no implied right of action for

fraud exists in favor of commodity option purchasers under the Commodity Exchange Act and the regulations promulgated by the CFTC to effect the Act. Second, the defendant contends that Congress, by its passage of the Commodity Exchange Act, intended to preempt not only legal claims based on federal and state securities laws, but all state statutory and common law claims which might be encompassed by the Commodity Exchange Act and which a prospective plaintiff might assert against a registered futures commission merchant. Chartered Systems also urges that the action be dismissed because the Court lacks jurisdiction over the person of the defendant, and because venue is improper.

■ The issue of whether the Commodity Exchange Act and the regulations issued by the CFTC impliedly provide a cause of action to a defrauded commodities option purchaser must be determined in light of the criteria articulated in *Cort v. Ash,* 422 U.S. 66, 78, 95 S.Ct. 2080, 2088, 45 L.Ed.2d 26 (1975):

> First, is the plaintiff "one of the class for whose *especial* benefit the statute was enacted," . . . that is, does the statute create a federal right in favor of the plaintiff? Second, is there any indication of legislative intent, explicit or implicit, either to create such a remedy or to deny one? * * * Third, is it consistent with the underlying purposes of the legislative scheme to imply such a remedy for the plaintiff? * * * And finally, is the cause of action one traditionally relegated to state law, in an area basically the concern of the States, so that it would be inappropriate to infer a cause of action based solely on federal law?

[citations omitted] *See Transamerica Mortgage Advisors, Inc. (TAMA) v. Lewis,* 444 U.S. 11, 100 U.S. 242, 62 L.Ed.2d 146

(1979); *Cannon v. University of Chicago,* 441 U.S. 677, 99 S.Ct. 1946, 60 L.Ed.2d 560 (1979). These factors are not to be given equal weight, as the touchstone of such a determination is "whether Congress intended to create the private right of action. . . ." *Touche Ross & Co. v. Redington,* 442 U.S. 560, 99 S.Ct. 2479, 2485, 61 L.Ed.2d 82 (1979).

The plaintiff has relied on certain regulations[1] promulgated by the CFTC pursuant to section 4c(b) of the Act, 7 U.S.C. § 6c(b). In the 1974 amendments to the Commodity Exchange Act (known as the Commodities Futures Trading Commission Act), Congress enacted section 4c(b), which provides in pertinent part:

> No person shall offer to enter into, enter into, or confirm the execution of, any transaction . . . involving any commodity regulated under this chapter, but not specifically set forth in section 2 of this title, prior to the enactment of the Commodity Futures Trading Commission Act of 1974, which is of the character of, or is commonly known to the trade as, an "option", "privilege", "indemnity", "bid", "offer", "put", "call", "advance guaranty", or "decline guaranty", contrary to any rule, regulation, or order of the Commission prohibiting any such transaction or allowing any such transaction under such terms and conditions as the Commission shall prescribe . . . . .

7 U.S.C. § 6c(b). Section 4b of the Act, 7 U.S.C. § 6b, constitutes an antifraud provision in connection with the sale or offer for sale of commodity futures contracts. Generally, the exercise of a London Commodity Option results in the purchase of the underlying futures contract for a particular commodity, and in this sense options and futures contracts are inseparable. *See British*

---

1. The plaintiff relies on the following CFTC regulations, and asserts that these regulations were violated: 17 CFR § 32.5(a) (which requires that a summary disclosure statement be furnished to the commodity options purchaser *prior to the entry of the transaction*); 17 CFR § 32.5(c) (which requires that the purchaser be informed of certain fees); 17 CFR § 32.9 (antifraud provision applicable to commodity option

transactions); and 17 CFR § 1.33 (which requires statements of net unrealized profit or loss to be furnished to certain customers). As count 3 of plaintiff's complaint alleges a violation of 17 CFR § 1.33(a)(1)(ii), which is limited in application to purchasers of futures contracts rather than options, count 3 fails to state a claim upon which relief may be granted and must be dismissed. *See* 17 CFR § 1.3(t).

*American Commodity Options Corp. v. Bagley*, 552 F.2d 482, 485 (2d Cir. 1977). By its passage of the 1974 amendments to the Act, Congress left it to the CFTC to enact specific antifraud regulations with respect to the sale of commodity options, and even to prohibit the sales of commodity option transactions if it chose. 7 U.S.C. § 6c(b) and (c).

Prior to the 1974 amendments to the Commodity Exchange Act which created the CFTC and various mechanisms to enforce the Act, the Act's antifraud provisions had widely been interpreted to impliedly provide for a cause of action in favor of a defrauded private individual. *See, e. g., Deaktor v. L. D. Schreiber & Co.*, 479 F.2d 529 (7th Cir. 1973), *rev'd on other grounds sub nom., Chicago Mercantile Exchange v. Deaktor*, 414 U.S. 113, 94 S.Ct. 466, 38 L.Ed.2d 344 (1974); *Booth v. Peavey Commodity Services*, 430 F.2d 132 (8th Cir. 1970). Against this background, Congress in 1974 amended the Act by its passage of the Commodities Futures Trading Commission Act, which gave exclusive jurisdiction over the regulation of commodity options and futures contracts to the newly created CFTC, and provided for a number of remedies to injured parties. In this regard, the Act allows the CFTC and state attorneys general to bring actions for injunctive relief (or for damages in the case of attorneys general) against persons for violation of the Act. 7 U.S.C. §§ 13a–1; 13a–2. Further, the Act allows aggrieved private individuals to bring administrative actions for reparation against persons who violate the Act. 7 U.S.C. § 18. The CFTC can issue reparation awards, which can be enforced by a district court and reviewed by the Courts of Appeals. The Act also provides for administrative sanctions which can be imposed by the CFTC and criminal penalties for certain violations. Based on the availability of these remedies and a somewhat ambiguous legislative history, the defendant argues that an implied right of action for fraud in connection with the purchase of commodity options under the Act and the CFTC's regulations does not exist.

The Court has determined that an implied right of action in favor of a purchaser of commodity options against a registered futures commission merchant exists for violations of the antifraud regulations promulgated by the CFTC pursuant to section 4c(b), 7 U.S.C. § 6c(b), of the Commodity Exchange Act. Several reasons support this conclusion. First of all, Congress presumably had knowledge of the interpretation of the Act by the courts when it enacted the 1974 amendments, and the Act at that time had consistently been construed to allow the implication of a cause of action for fraud in favor of defrauded persons. *See Cannon v. University of Chicago*, 441 U.S. 677, 99 S.Ct. 1946, 60 L.Ed.2d 560 (1979) (in finding that a private right of action existed under Title IX of the Educational Amendments of 1972, the Court relied in part on Congress' knowledge of the treatment by the courts in upholding private rights of action with respect to a similarly worded statute, Title VI). Prior to the amendments, the Court of Appeals for the Eighth Circuit had held that the Act provided for a private damage remedy for violation of the Act's antifraud provisions in *Booth v. Peavey Commodity Services*, 430 F.2d 132 (8th Cir. 1970) and as recently as last year, the same Court of Appeals noted that private actions under the Act were "well recognized." *Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Goldman*, 593 F.2d 129, 133 n. 7 (8th Cir. 1979). Second, insofar as the Act's legislative history is concerned, there are no statements by any members of Congress which disapprove a private right of action for damages. *See Alken v. Lerner*, 485 F.Supp. 871, (D.N.J. February 22, 1980). Further, the two bills allowing for private recovery which were rejected by Congress both contained treble damage provisions, and their rejection can reasonably be interpreted as action taken by Congress to restrict further expansion of a preexisting private remedy. *Smith v. Groover*, 468 F.Supp. 105, 113 (N.D.Ill.1979). Third, with regard to the Act's provision for reparation proceedings, the very language of that statute provides that any person "may" institute such proceedings, thus im-

plying that it is not the investor's only course of action insofar as litigation is concerned. 7 U.S.C. § 18; *R. J. Hereley & Son Co. v. Stotler & Co.*, 466 F.Supp. 345 (N.D. Ill.1979). Moreover, 7 U.S.C. § 2 expressly states that "[n]othing in this section [which confers exclusive jurisdiction on the CFTC] shall supersede or limit the jurisdiction conferred on courts of the United States or any State," thus circumstantially inferring that the Act does not bar private actions. Furthermore, in light of the general purpose of the Act to deter fraud, it seems perfectly logical to effectuate the purposes of the statute to allow injured commodity option investors to sue persons for fraud under the Act. Finally, the CFTC's determination is entitled to some deference, and it has consistently taken the position that a private right of action for fraud exists under the Act.

While the decisions considering the issue of whether a private right of action exists under the Act are mainly concerned with futures contracts rather than options, this factor is not of great importance here.[2] As noted, the exercise of a London Commodity Option results in the purchase of a futures contract, and in this manner options and futures contracts are somewhat intertwined. If a private right of action exists for fraud in connection with the sale of futures contracts, it would certainly be anomalous to conclude that no such right of action existed for defrauded purchasers of commodity options. This conclusion is reinforced by Congress' treatment of the issue in giving the CFTC power to regulate fraudulent practices and even the vast power to ban option trading entirely in order to proscribe the pervasive fraudulent activity in commodity option trading. 7 U.S.C. § 6c(b) and (c).

The defendant also contends that as Congress gave the CFTC "exclusive jurisdiction" over commodity options, Congress thereby intended to preempt all state statutory and common law claims which could be asserted against futures commission merchants registered under the Act, and therefore the remaining counts should be dismissed. The same provision in the Act which grants power to the CFTC over commodity options also limits this jurisdiction by providing that "[n]othing in this section shall supersede or limit the jurisdiction conferred on courts of the United States or any state." 7 U.S.C. § 2. The passage of 7 U.S.C. § 2 is intended to clarify "the preemption of all other would-be regulators at every level of government." *Jones v. B. C. Christopher & Co.*, 466 F.Supp. 213 (D.Kan. 1979) *quoting* Johnson, *The Commodity Futures Trading Commission Act: Preemption as Public Policy*, 29 Vanderbilt L.Rev. 1, 2 (1976). It logically follows that the Act preempts private actions based on federal or state statutory schemes which contemplate agency regulation which would interfere with the CFTC's jurisdiction over commodity options. Therefore, plaintiff's claim under the Minnesota Securities Act (Count 15) is preempted as the state securities statutory scheme contemplates state agency involvement and regulation. *Hofmayer v. Dean Witter & Co., Inc.*, 459 F.Supp. 733 (N.D.Cal.1978); *Bartels v. International Commodities Corp.*, 435 F.Supp. 865 (D.Conn.1977); *cf. State v. Coin Wholesalers, Inc.*, 311 Minn. 346, 250 N.W.2d 583 (1976). The Court has concluded that as the remaining state law claims envision no administrative agency involvement which might conflict with the CFTC's regulatory

**2.** The defendant urges this Court to adopt the reasoning and result of *Stone v. Saxon & Windsor Group, Ltd.*, 485 F.Supp. 1212, (N.D.Ill. 1980), which refused to imply a private right of action in favor of commodity option purchasers who sought to recover damages pursuant to transactions entered into in violation of the Act's ban on option trading. The Court finds the *Stone* decision unpersuasive. First, the decision in *Stone* dealt with the ban on option trading rather than fraud, and in the words of

the *Stone* court, those decisions dealing with the antifraud provisions of the Act were simply "not controlling." *Id.*, at 1216. Second, this Court disagrees with *Stone*'s conclusion regarding the legislative history of the Act precluding a private right of action. *See Alken v. Lerner*, 485 F.Supp. 871 (D.N.J.1980); *Smith v. Groover*, 468 F.Supp. 105 (N.D.Ill.1979); *R. J. Hereley & Son v. Stotler & Co.*, 466 F.Supp. 345 (N.D.Ill.1979); *Jones v. B. C. Christopher & Co.*, 466 F.Supp. 213 (D.Kan.1979).

role, and as 7 U.S.C. § 2 specifically limits the CFTC's role by not depriving federal or state courts of their respective jurisdictions, the other state related claims asserted by plaintiff are not preempted by the Act.

The Court has also determined that the exercise of jurisdiction over the person of Chartered Systems is consistent with the Minnesota long arm statutes, Minn.Stat. §§ 543.19 and 303.13, subd. 1(3), and is constitutionally permissible.[3]  *Toro Co. v. Ballas Liquidating Co.*, 572 F.2d 1267 (8th Cir. 1978); *Paulos v. Best Securities, Inc.*, 260 Minn. 283, 109 N.W.2d 576 (1961). Similarly, the Court has concluded that the venue of this action is proper in Minnesota under 28 U.S.C. § 1391(b) and (c).  *See Cochrane v. Iowa Beef Processors, Inc.*, 596 F.2d 254 (8th Cir.), *cert. denied*, 442 U.S. 921, 99 S.Ct. 2848, 61 L.Ed.2d 290 (1979); *Du-Al Corp. v. Rudolph Beaver, Inc.*, 540 F.2d 1230 (4th Cir. 1976); *Houston Fearless Corp. v. Teter*, 318 F.2d 822 (10th Cir. 1963).

Accordingly, IT IS HEREBY ORDERED that defendant's motion to dismiss is granted only with respect to counts 3 and 15 of plaintiff's complaint, and in all other respects, defendant's motion to dismiss is denied.

---

**3.** Defendant's motion to strike an affidavit filed by plaintiff's counsel, made at the hearing on this motion, is denied.