Selig STRAX, Plaintiff,

v.

COMMODITY EXCHANGE, INC., Nelson Bunker Hunt, William Herbert Hunt, Lamar Hunt, International Metals Investment Co., Ltd., Bache Halsey Stuart Shields, Inc., Bache Group, Inc., Merrill Lynch, Pierce, Fenner & Smith Incorporated, Conticommodity Services, Inc., Norton Waltuch, Melvin Schnell, Gillian Financial, Conticapital Management, Inc., Conticapital Ltd., Naji Robert Nahas, Sheik Mohammed Aboud Al-Amoudi, Sheik Ali Bin Mussalem Banque Populaire Suisse, The Board of Trade of the City of Chicago and "John Does" Nos. 17 through 30, Defendants.

No. 79 Civ. 5366(MEL).

United States District Court,
S. D. New York.

Sept. 11, 1981.

Toboroff Gottesman & Lovell, New York City, for plaintiff; Leonard Toboroff, Christopher Lovell, New York City, of counsel.

Baer, Marks & Upham, New York City, for defendant Commodity Exchange, Inc.; Mark A. Buckstein, Barry J. Mandel, Thomas E. Albright, New York City, of counsel.

Kirkland & Ellis, Chicago, Ill., and Townley & Updike, New York City, for defendant Board of Trade of the City of Chicago; Jonathan D. Moses, Chicago, Ill., and James K. Leader, New York City, of counsel.

Hughes, Hubbard & Reed, New York City, and Shank, Irwin, Conant, Williamson & Greville, Dallas, Tex., for defendants Nelson Bunker Hunt, William Herbert Hunt, and Lamar Hunt; Powell Pierpoint, George A. Davidson, Joseph C. Garni, Margaret G. Sokolov, New York City, and Robert Goldberg, of counsel.

Paul, Weiss, Rifkind, Wharton & Garrison, New York City, for defendants Conti-Commodity Services, Inc., ContiCapital Management, Inc., ContiCapital Limited, and Norton Waltuch; Mark H. Alcott, Richard D. Friedman, New York City, of counsel.

Sullivan & Cromwell, New York City, for defendants Bache Halsey Stuart Shields Inc. and Bache Group Inc.; Marvin Schwartz, Nadine Strossen, Florence A. Davis, New York City, of counsel.

Chadbourne, Parke, Whiteside & Wolff, New York City, for defendants ContiCommodity Services, Inc. and Norton Waltuch; Daniel J. O'Neill, Michael C. Gilbert, Henry B. Pitman, New York City, of counsel.

Rogers & Wells, New York City, for defendant Merrill Lynch, Pierce, Fenner & Smith, Inc.; James V. Ryan, Susan A. Garcia, New York City, of counsel.

Arnold & Porter, Washington, D. C. and Fried, Frank, Harris, Shriver & Jacobson, New York City, for defendant Banque Populaire Suisse.

LASKER, District Judge.

This lawsuit arises out of the much publicized events in the silver market in 1979 and 1980 which included the meteoric rise in the price of silver and the subsequent collapse of the market in March 1980. Selig Strax filed this class action[1] against Nelson Bunker Hunt, William Herbert Hunt, Lamar Hunt, International Metal Investment Co., Ltd. ("IMIC"), Bache Halsey Stuart Shields, Inc., Bache Group (together, "Bache"), Conticommodity Services, Inc., Norton Waltuch, Conticapital Management, Inc., Conticapital Ltd. (together, "Conti"), Melvin Schnell, Gillian Financial, Naji Robert Nahas, Sheik Mohammad Aboud Al-Amoudi, Sheik Ali Bin Mussalem, Banque Populaire Suisse (all of the above are collectively referred to as the "nonexchange defendants"), the Board of Trade of the City of Chicago ("CBOT"), Commodity Exchange, Inc. ("Comex"), and various "John Does." Strax alleges that the non-exchange defendants conspired to and did cause the price of refined silver and silver futures to rise, monopolize the trade in silver and seize control of supplies of refined

---

1. Strax purports to sue "[o]n behalf of himself and all others similarly situated (*i. e.*, persons who liquidated their net short positions in silver futures contracts traded in the United States, between August 17, 1979 and March 26, 1980, inclusive)." Complaint ¶ 1. A sharply contested motion for class certification is pending.

silver and silver production facilities, in violation of federal and state antitrust laws, specified and unspecified sections of the Commodity Exchange Act, 7 U.S.C. §§ 1 et seq. ("CEA"), and regulations of the Commodity Futures Trading Commission ("CFTC") promulgated thereunder. The exchanges (Comex and the CBOT) are alleged to have negligently failed to maintain an orderly market in silver futures and to have done so willfully and intentionally.[2]

A number of motions based on a variety of theories, are pending: (1) Merrill Lynch, Bache and Conti move pursuant to Rule 12(b)(6), Fed.R.Civ.P., to dismiss the antitrust claims. (2) Comex and the CBOT move pursuant to Rules 12(b)(1) and 12(b)(6), Fed.R.Civ.P., to dismiss all claims against them, arguing that there is no private right of action for failure to maintain an orderly market, and that by failing to allege that he traded on the Comex or the CBOT, Strax has not established (i) standing to sue, (ii) a private right of action under the CEA in his favor, and (iii) proximate cause. Finally, the exchange defendants argue that Strax has not alleged scienter. (3) The Hunts, Bache and Conti move pursuant to Rule 12(b)(6), Fed.R.Civ.P., to dismiss the claims not based on the antitrust laws for failure to state a claim.[3]

**I.**

Merrill Lynch, Bache and Conti move under Rule 12(b)(6) to dismiss the antitrust claims against them. As to the federal antitrust claims,[4] they argue that Strax lacks "antitrust standing" and that the CEA impliedly repealed the operation of the antitrust laws in the area of commodity futures trading. As to the state claims[5] defendants argue that state antitrust laws have been preempted by the CEA. Strax responds (1) that he has "antitrust standing" because he was in the target area of the alleged conspiracy and (2) that the legislative history of the CEA demonstrates Congressional intent both to preserve the application of the antitrust laws to the commodities market and to confer private standing to assert antitrust claims.

*A. Standing*

■ Section 4 of the Clayton Act, 15 U.S.C. § 15, provides:

"Any person who shall be injured in his business or property by reason of anything forbidden in the antitrust laws may sue therefor in any district court of the United States in the district in which the defendant resides or is found or has an agent, without respect to the amount in

**2.** Strax has by letter withdrawn his fifth claim which is brought under the Texas antitrust laws, Tex.Bus. & Com.Code Ann. c. 15, his seventh claim for "violation of the common law" (Complaint ¶ 50) including common law manipulation, monopoly and restraint of trade, and his tenth claim for fraud. Letter of Christopher Lovell, dated January 15, 1981. During oral argument on the motions to dismiss, counsel for Strax also withdrew any claims under Rule 31.03 of the CFTC, 17 C.F.R. 31.03, under the rules and regulations of Comex and the CBOT, under §§ 4a and 4b of the CEA, 7 U.S.C. §§ 6a, 6b, and any claims for aiding and abetting relating to those withdrawn claims. Strax also limited his claims under § 9(b) of the CEA, 7 U.S.C. § 13(b), to claims under the first and second subclauses of that section. *See* letter of Florence Ann Davis, counsel for Bache, dated July 27, 1981. Strax has not agreed to withdraw his claims with prejudice, and defendants request that the court decide their motions to dismiss the withdrawn claims with prejudice. However, since the claims have been withdrawn, the motions to dismiss them are moot.

**3.** Two other motions to dismiss, one by Conti and one by the exchanges, were filed before the Second Circuit's decision in *Leist v. Simplot*, 638 F.2d 283 (2d Cir. 1980), which held that the CEA created a private right of action. To the extent these motions are based on the argument that there is no private right of action under the CEA, they are denied based on *Leist*. To the extent they are based on other grounds, those grounds are also the basis of the motions listed in the text above, and are disposed of in the same way as indicated below.

**4.** Strax's first, third, sixth and ninth claims are brought under "the Sherman Antitrust Act of 1914, 15 U.S.C. §§ 1–11," and "the Clayton Antitrust Act of 1914, 15 U.S.C. §§ 12–27." The generality of the allegation is frustratingly unhelpful.

**5.** Strax's fourth claim alleges violation of New York's antitrust law, N.Y.Gen.Bus.Law §§ 340 et seq.

controversy, and shall recover threefold the damages by him sustained, and the cost of suit, including a reasonable attorney's fee."

Several judicial doctrines limit the classes of plaintiffs who may sue under this section. *E. g., Illinois Brick Co. v. Illinois,* 431 U.S. 720, 97 S.Ct. 2061, 52 L.Ed.2d 707 (1977); *Reading Industries, Inc. v. Kennecott Copper Corp.,* 631 F.2d 10 (2d Cir. 1980); *Mid-West Paper Products Co. v. Continental Group, Inc.,* 596 F.2d 573 (3d Cir. 1979). Defendants rely on the doctrine of *Reading Industries, Inc. v. Kennecott Copper Corp., supra,* 631 F.2d 10 (2d Cir. 1980).

In *Reading,* a refiner of copper scrap sued three producers of refined copper, alleging that defendants' alleged conspiracy to keep the price of refined copper low and to ration its supplies among customers drove up the price of copper scrap. The copper scrap market in which the plaintiff traded is a separate market from that for refined copper in which defendants sold, although the plaintiff alleged that the prices in each were interrelated. The court held that "the causal relationship between defendants alleged payment of high scrap prices is too remote to permit imposition of liability." *Id.* at 13 (footnote omitted).

Defendants argue that this case is controlled by *Reading* because Strax does not allege that he or the members of the proposed class entered into transactions directly with the defendants, but only that defendants' actions had a "primary impact" on the market in which Strax traded "as a whole."[6]

*Reading* relied in part on the rationale of the decision in *Illinois Brick Co. v. Illinois, supra,* 431 U.S. 720, 97 S.Ct. 2061, 52 L.Ed.2d 707 (1977), in which the Court held that an indirect purchaser in a vertical chain of distribution could not recover under the antitrust laws. To allow such an action would involve the courts in "the attempt to trace the complex economic adjustments to a change in the cost of a particular factor of production [and] would greatly complicate and reduce the effectiveness of already protracted treble-damage proceedings." *Id.* at 732,[7] 97 S.Ct. at 2068. The *Reading* court held that to permit the plaintiff to bring its claim would similarly "engage the court in hopeless speculation:"

> "Reading's theory of antitrust injury depends upon a complicated series of market interactions between two sources of copper: the refined copper market in which defendants acted and the copper scrap market in which Reading allegedly sustained injuries. To establish a causal chain, the actions of innumerable individual decision-makers must be reconstructed . . . .
>
> . . . [T]o find antitrust damages in this case would engage the court in hopeless speculation concerning the relative effect of an alleged conspiracy in the market for refined copper on the price of copper scrap, where countless other market variables could have intervened to affect those pricing decisions. The court's task of tracing would be difficult, if not impossible."

631 F.2d at 13–14.

In contrast to *Reading,* Strax alleges he traded in the very market which the defendants are alleged to have manipulated, and proof of the impact of defendants' alleged action on that market would not require speculation or attenuated theories of causation. As Judge Pierce observed in response to a similar challenge to antitrust claims asserted for alleged manipulation of the prices of November 1977 orange juice futures contracts,

> "[t]hat futures contracts trading is a 'zero sum game' (i. e., every gain can be

**6.** Memorandum In Support of the Motion of Certain Defendants for an Order Dismissing the Antitrust Claims Pursuant to Fed.R.Civ.P. 12(b)(6), p. 6.

**7.** Although defendants do not argue the point, we note that the holding of *Illinois Brick Co. v. Illinois,* 413 U.S. 720, 97 S.Ct. 2061, 52 L.Ed.2d 707 (1977), that an indirect purchaser may not sue under § 4, does not bar Strax's claim. *Accord Pollock v. Citrus Associates,* 512 F.Supp. 711, 718 n. 7 (S.D.N.Y.1981); *see Reading Industries, Inc. v. Kennecott Copper Corp.,* 477 F.Supp. 1150, 1157 (S.D.N.Y.1979), *aff'd,* 631 F.2d 10 (2d Cir. 1980).

matched with a corresponding loss), *see Leist v. Simplot*, [638 F.2d 283, 286–87 (2d Cir. 1980)], leads the Court to conclude that the plaintiffs were well within the 'target area' of the defendants' alleged anticompetitive behavior; that is, their anticompetitive behavior was 'aimed' at the plaintiffs. Stated another way, the Court finds that there is a 'legally significant causal relationship between the [defendants'] alleged violation and the [plaintiffs'] alleged injury.' *Reading, supra*, at 12.

"The plaintiffs allege that they were forced to pay higher prices due to the defendants' restriction on the supply of offsetting contracts. Regardless of whether the plaintiffs ultimately purchased offsetting contracts from the defendants or from other traders with a long position, the price throughout the market allegedly rose as a result of the defendants' activities. In short, while—as is true with the vast majority of antitrust cases—proof of damages will most likely not be simple, this is not an action 'based on conjectural theories of injury and attenuated economic causality that would mire the courts in intricate efforts to recreate the possible permutations in the causes and effects of a price change.' *Reading, supra*, at 14."

*Pollock v. Citrus Associates*, 512 F.Supp. 711, 719 (S.D.N.Y.1981).

Moreover, the result of defendants' position here, if adopted, would be to preclude the application of the antitrust laws to any economic activity effected through an exchange system, since it is impossible to show that a particular purchaser bought from a particular seller in such a context. *Id.* Such a proposition finds no support in law or policy.

Accordingly, the motion to dismiss the federal antitrust claims for lack of standing is denied.

## B. Implied Repeal of the Antitrust Laws by the CEA

■ Defendants next contend that the antitrust laws are inapplicable to their al-

leged actions because the availability of private remedies under the CEA—whether a private right of action under the CEA or a reparation proceeding against futures commission merchants, *see* 7 U.S.C. § 18—makes antitrust remedies in this area superfluous, and because by 7 U.S.C. § 19, Congress has directed the CFTC to "take into consideration the public interest to be protected by the antitrust laws." Strax argues that Congress has specifically stated its intent that the antitrust laws apply to commodities futures trading.

In *Pollock v. Citrus Associates, supra*, 512 F.Supp. 711 (S.D.N.Y.1981), the court rejected a similar argument. Judge Pierce concluded that

"Congress intended that antitrust claims be allowed against brokers and traders operating in the commodity futures markets. Further, there is no indication that Congress intended a private right of action under the CEA to be an exclusive remedy for price manipulation."

*Id.* at 717 (footnote omitted).

We agree with Judge Pierce's extensive analysis of the relevant legislative history and his conclusion that Congress intended to permit antitrust claims to be brought against commodities futures trading practices specifically proscribed by the CEA. Two clear signs shine through indicating Congressional intent. First, the provisions of an earlier version of the bill that exempted from antitrust liability any registered exchange, association, trader or broker who acted pursuant to or in accordance with CFTC regulations were eliminated. Instead, the Act as passed directed that CFTC to "take into consideration the public interest to be protected by the antitrust laws," 7 U.S.C. § 19. *See* H.R.Rep.No.93–975, 93rd Cong., 2d Sess., 23–28 (1974).

An equally important sign of Congress' intent that the antitrust laws not be preempted by the CEA is the statement by House Judiciary Chairman, Peter W. Rodino, Jr., during his testimony before the Senate Committee on Agriculture and For-

estry, requesting that Congress clarify that the federal courts' jurisdiction over antitrust cases, was to be preserved by the Act:

> "I particularly favor the provisions insuring the application of the antitrust laws to the commodity futures industry. . . .

> The nature of commodity futures markets demonstrates the peculiar intimacy and special relationship these markets have with the fundamental national legal, economic, and social policies expressed in our antitrust laws since enactment of the Sherman Act in 1890. Commodity futures markets and regulation act upon the laws of supply and demand directly; legitimate types of price stabilization through pricing information systems; and reduce marketplace risks of doing business through types of lawful price fixing.

> \*    \*    \*    \*    \*    \*

> . . . In brief, in successive years, wheat, soybeans, and corn have been subjected to anticompetitive and monopolistic practices in commodity markets that have significantly contributed to food prices charged consumers. These developments indicate the urgency of applying antitrust principles to commodity markets unequivocally. . . ."

*Hearings on S. 2485, S. 2578, S. 2837 and H.R. 13113 Before the U.S. Senate Committee on Agriculture and Forestry*, 93rd Cong., 2nd Sess. 258–59 (1974).[8]

Accordingly, the motion to dismiss the federal antitrust claims is denied.[9]

## C.    State Antitrust Claims

■    Defendants also move to dismiss the claims under the New York antitrust law, N.Y.Gen.Bus.Law §§ 340 *et seq.*, on the grounds that that statute is preempted by the CEA in the area of commodities futures trading.[10] Relying on cases such as *Witzel v. Chartered Systems Corp.*, 490 F.Supp. 343, 347 (D.Minn.1980), (holding that the Minnesota Securities Act is preempted by the CEA), defendants argue that 7 U.S.C. § 2 (which grants the CFTC "exclusive jurisdiction" over transactions subject to CEA regulation, but preserves "the jurisdiction conferred on courts by the United States or any state") has been interpreted to " 'preemp[t] private actions based on federal or state statutory schemes which contemplate agency regulation which would interfere with the CFTC's jurisdiction over commodity [transactions].' "[11] They contend that the New York statute provides for an active role by the attorney general in investigating and prosecuting illegal restraints of trade and that therefore it is preempted by the CEA. Strax argues that the role of the New York attorney general in antitrust litigation is "subsidiary" only.

No cases decided by a federal circuit court have been cited which have addressed the effect of that section. However, we conclude that defendants have not established that the operation of the New York antitrust law would interfere with the implementation of the CEA and that Strax's claim under the New York statute is not

---

**8.**  As a result of Chairman Rodino's suggestion, Congress enacted section 201(b) of the CFTCA, 7 U.S.C. § 2, which states:

> "Nothing in this Section shall supersede or limit the jurisdiction conferred on courts of the United States or any State."

**9.**  Defendants argue that they cannot be liable under the antitrust laws for actions compelled by the CEA or by the regulations promulgated pursuant to the CEA. Specifically, they contend that they cannot be liable for allegedly allowing the Hunts to "pyramid" their silver holdings (Complaint ¶ 31(gg)) because they were required by the CEA to "treat a customer's trading profits as the property of that customer" under 17 C.F.R. § 1.2 (1980). Paragraph 31(gg) of the complaint alleges that the

defendants facilitated the conspiracy to corner the silver market and to manipulate the price of silver in various ways. It does not follow from the directive to treat the customer's profits as the customer's property that one is compelled to facilitate a conspiracy such as that alleged here.

**10.**  The claim under the Texas antitrust laws was withdrawn. *See* note 2 *supra.*

**11.**  Memorandum In Support of the Motion of Certain Defendants for an Order Dismissing the Antitrust Claims Pursuant to Fed.R.Civ.P. 12(b)(6), p. 25 (quoting *Witzel v. Chartered Systems Corp.*, 490 F.Supp. 343, 347 (D.Minn. 1980)).

preempted. No section of the New York statute has been cited which is or is claimed to be inconsistent with the operation of the CEA. The mere fact that the New York attorney general is empowered to investigate and prosecute restraints of trade does not lead to the conclusion that the actions of his office would impede the CFTC or interfere with the execution of the mandate of the CEA to regulate commodity futures trading.

Finally, given Congress' explicit intent to preserve the applicability of the federal antitrust laws to the area regulated by the CEA, as noted above, there is no reason to believe that Congress intended to preempt state antitrust laws. As noted above, a bill exempting certain commodities futures trading practices from federal antitrust liability was at first introduced and later withdrawn. No such bill was even introduced to create an exemption from state antitrust laws. Moreover, the legislative history of the portion of 7 U.S.C. § 2 (the section which defendants argue preempts state antitrust laws) which preserves the jurisdiction of federal and state courts includes the statement by Chairman Rodino quoted above. *See* note 8 *supra*. There is no basis for a finding that Congress intended a section of the statute which in part was enacted to preserve federal antitrust jurisdiction to preempt state antitrust laws.

The motion to dismiss the state antitrust claims is denied.

\* \* \*

In sum, we conclude that the federal antitrust laws were not repealed by implication by the CEA. There is no more reason to believe that Congress intended impliedly to repeal the state antitrust laws.

The motion to dismiss the antitrust claims is denied.

**12.** Plaintiff's Memorandum of Law in Opposition to the Motion of Certain Defendants to Dismiss Certain Claims and for Other Relief, p. 32.

**13.** It is true that Strax does not claim to have traded on the CBOT. However, he alleges that the Comex and the CBOT are in effect one market, and that price manipulation on one

## II.

The complaint asserts two claims against Comex and the CBOT: the eleventh claim for "negligently fail[ing] to maintain an orderly market for the trading of silver futures contracts" (Complaint ¶ 64), and the twelfth for doing so "willfully and intentionally" (Complaint ¶ 68), both in violation of the CEA.

Comex and the CBOT move pursuant to Rules 12(b)(1) and 12(b)(6), Fed.R.Civ.P., to dismiss these claims on several grounds. First, they argue that as a consequence of Strax's failure to allege that he traded on the Comex or the CBOT, (1) no private right of action under the CEA runs in his favor, (2) he lacks standing to sue, and (3) his complaint fails to allege facts showing that his injuries were proximately caused by defendants' alleged actions.

■ Defendants are correct that the omission to plead that he traded on an exchange renders Strax's complaint defective. However, it appears from Strax's statement in his brief in response to this motion that he wishes to plead that he traded on the Comex.[12] The failure to include such a statement in the complaint—which has already been amended twice—reflects the excessively casual tone and shotgun approach of Strax's pleading and his memorandum in response to these motions. Much trouble and expense would have been saved to the defendants and the court if such a statement which was considered so obvious as to be included in the brief had been included in the complaint. Accordingly, the motion to dismiss the complaint against the exchanges will be granted twenty days from the filing of this memorandum unless before that date an amended complaint is filed to cure this defect.[13]

directly affects the price on the other. Complaint ¶ 28. Nevertheless, the failure to state in the complaint that he traded on the Comex renders the complaint defective as to the CBOT as well. The complaint against the CBOT will also be dismissed if the amended complaint to be filed within twenty days does not include appropriate allegations as to CBOT.

Second, defendants argue that there is no private right of action under the CEA against a contract market for failing to maintain an orderly market. Further, they argue that even if there were such a private right of action, a plaintiff must allege defendant's scienter, which they claim Strax has not done in this eleventh claim (which alleges negligent failure to maintain an orderly market). Strax relies on the decision in *Leist v. Simplot*, 638 F.2d 283 (2d Cir. 1980), as validating his pleading.

In *Leist*, the court held that a private right of action was created by certain sections of the CEA, including sections 5(d) and 5a(8), 7 U.S.C. §§ 7(d), 7a(8). *Id.* at 322. These sections provide:

"The Commission [CFTC] is hereby authorized and directed to designate any board of trade as a 'contract market' when, and only when, such board of trade complies with and carries out the following conditions and requirements:

\* \* \* \* \* \*

(d) When the governing board thereof provides for the prevention of manipulation of prices and the cornering of any commodity by the dealers or operators upon such board."

7 U.S.C. § 7(d).

"Each contract market shall—

\* \* \* \* \* \*

(8) enforce all bylaws, rules, regulations, and resolutions, made or issued by it or by the governing board thereof or any committee, which relate to terms and conditions in contracts of sale to be executed on or subject to the rules of such contract market or relate to other trading requirements, and which have been approved by the Commission pursuant to paragraph (12) of this section; and revoke and not enforce any such bylaw, rule, regulation, or resolution, made, issued, or proposed by it or by the governing board thereof or any committee,

which has been disapproved by the Commission."

7 U.S.C. § 7a(8).

One of the allegations in the *Leist* complaint was that the New York Mercantile Exchange and its officials had " 'negligently failed to maintain an orderly market for trading in Maine futures in violation of the duties imposed upon them under the provisions of the [CEA].' " *Id.* at 292. Although the court did not specifically discuss this allegation, other than to list it in its description of the complaint, nor define the contours of the private right of action under the sections just quoted, it reversed the trial court's dismissal of the complaint— presumably under the authority of 7 U.S.C. §§ 7(d) and 7a(8). In sum, the result of *Leist* was to permit the plaintiff to sue an exchange for a negligent failure to maintain an orderly market.

Defendants argue that *Leist* does not mandate the conclusion that there is a private right of action against the exchanges here for failing to maintain an orderly market. They contend that *Leist* is distinguishable on the alleged facts, since there is no allegation here of a massive default in the delivery of future contracts, of concealment of violation of the CEA, of a conspiracy with the alleged manipulators, and, they argue, for violation of their own regulations. However, first, we note that Strax did allege violations of the exchanges' own regulations at the time the motion to dismiss was filed, although he has subsequently withdrawn those allegations. Second, and more important, Strax does allege that the exchanges failed to meet their legal obligation to act while the other defendants conspired to and did monopolize the international silver market. Clearly the scope and substance of Strax's allegations equal those of *Leist*.

▪ Thus, *Leist* appears to be on all fours with Strax on this point and, accordingly, the motion to dismiss by Comex and the CBOT for negligently failing to maintain an orderly market is denied.[14]

14. Comex and the CBOT move alternatively pursuant to Rules 12(f) and 12(e), Fed.R.Civ.P., to strike the exhibits to the complaint and for a more definite statement. The exhibits to the complaint include a transcript of the proceedings before the Commerce Consumer and Mon-

### III.

The Hunts, Bache and Conti move pursuant to Rule 12(b)(6), Fed.R.Civ.P., to dismiss certain claims [15] for failure to state a claim. They contend that Strax fails to state a claim either under 7 U.S.C. § 13c(a) because that section provides for an administrative remedy only, or under 7 U.S.C. § 13(b) because he does not allege scienter. Strax responds (1) that 7 U.S.C. § 13c(a) provides a private cause of action for aiding and abetting violations of the statute, and (2) that he has alleged scienter even though as he claims that element is not necessary to a claim of manipulation.

Section 13c(a) provides:

"Any person who commits, or who willfully aids, abets, counsels, commands, induces, or procures the commission of, a violation of any of the provisions of this chapter, or any of the rules, regulations, or orders issued pursuant to this chapter, or who acts in combination or concert with any other person in any such violation, or who willfully causes an act to be done or omitted which if directly performed or omitted by him or another would be a violation of the provisions of this chapter or any of such rules, regulations, or orders *may be held responsible in administrative proceedings under this chapter for such violation as principal.*" (emphasis added)

The language of the statute is unambiguous: an administrative forum is provided to redress aiding and abetting violations of the CEA. Thus, to the extent that the section implies that there is a private right of action to sue for aiding and abetting violations, that claim is directed to be brought to an administrative forum. As the Supreme Court noted in *Transamerica Mortgage Advisors, Inc. (TAMA) v. Lewis*, 444 U.S. 11, 100 S.Ct. 242, 62 L.Ed.2d 146 (1979),

"Yet it is an elemental canon of statutory construction that where a statute expressly provides a particular remedy or remedies, a court must be chary of reading others into it. 'When a statute limits a thing to be done in a particular mode, it includes the negative of any other mode.'"

*Id.* at 19–20, 100 S.Ct. at 247 (quoting *Botany Mills v. United States*, 278 U.S. 282, 289, 49 S.Ct. 129, 132, 73 L.Ed. 379 (1929)).

Accordingly, we conclude that section 13c(a) did not create a private judicial right of action and the motion to dismiss that claim is granted.[16]

---

etary Affairs Subcommittee of the House Government Operations Committee, newspaper and magazine articles, and a schedule 13D filed by the Bache Group. Defendants do not specify which of these exhibits they believe is "redundant, immaterial, impertinent or scandalous." nor point to any specific material in them which they contend should be stricken, but merely quote the rule. We have reviewed the material and while its probative value is questionable, it nevertheless is not improper. The motion to strike is therefore denied.

The motion for a more definite statement is based on Strax's failure to specify in his complaint which sections of the statute and the CFTC regulations he claims to have been violated. However, at oral argument he has now made clear on which sections he relies, *see* note 2 *supra*. However, this is not a substitute for stating in the complaint precisely what Strax's claims are. Accordingly, the motion will be granted in twenty days unless Strax files an amended complaint stating under which sections of the CEA his claims are brought.

The exchange defendants also seek a more definite statement as to what alleged conduct was actionable and how Strax was damaged by it.

The complaint alleges that the contract markets failed to act to prevent the alleged conspiracy to manipulate silver prices, which caused the price of silver to soar and then to plummet. The complaint further alleges that Strax liquidated a net short position in silver contracts at the time the silver prices were high. Thus, the complaint sufficiently alleges how Strax was injured by the actions of the exchange defendants.

**15.** The motion to dismiss the claims under 7 U.S.C. §§ 6b, 6a, and Rule 31.02, 17 C.F.R. § 31.03, and for common law joint tort and fraud are moot as a result of Strax's withdrawal of those claims. *See* note 2 *supra*.

**16.** It should be noted that the history of section 13c(a) differs from sections 6a, 6b, 7(d), 7a(8) and 13(b) which *Leist* held to have impliedly created private judicial causes of action. The *Leist* majority relied on the proposition that prior to the enactment of the 1974 amendments to the CEA it had been well-established that private causes of action were available under the statute, and Congress did not take the opportunity to amend the statute in this respect.

Defendants contend that the claim under 7 U.S.C. § 13b, whose terms are set forth in the margin,[17] must be dismissed for failure to allege scienter. We find that it is unnecessary to decide whether, as Strax argues, scienter is not essential to a claim of manipulation under this section, because he has made allegations of scienter sufficient to withstand this motion, to wit:

> "Between August 17, 1979 and March 26, 1980, inclusive, upon information and belief, the co-conspirators intended to cause, attempted to cause and did cause the price of silver futures contracts traded in the United States to increase to levels which were, in all the circumstances and based upon the fundamentals, unreasonably and artificially high, in violation of the CEA."

Complaint ¶ 35.

Accordingly, the motion to dismiss the claim under 7 U.S.C. § 13(b) is denied.

\* \* \*

In sum, the motion to dismiss the claims under 7 U.S.C. § 13c(a) is granted. The motions to dismiss the claims against Comex and the CBOT and the motion for a more definite statement will be granted in twenty days [18] unless an amended complaint is filed as indicated. All other motions are denied.

It is so ordered.

Neither prior to 1974 nor after has any court held that section 13c(a) opened the door of the federal courthouse to private litigants. Accordingly Congress cannot be said to have ratified the concept of a private right existing under section 13c(a).

17. "It shall be a felony punishable by a fine of not more than $500,000 or imprisonment for not more than five years, or both, together with the costs of prosecution, for any person to manipulate or attempt to manipulate the price of any commodity in interstate commerce, or for future delivery on or subject to the rules of any contract market, or to corner or attempt to corner any such commodity, or knowingly to deliver or cause to be delivered for transmission through the mails or in interstate commerce by telegraph, telephone, wireless, or other means of communication false or misleading

or knowingly inaccurate reports concerning crop or market information or conditions that affect or tend to affect the price of any commodity in interstate commerce, or knowingly to violate the provisions of section 6, 6b, 6c(b) through 6c(e), 6h, 6o(1), or 23 of this title, or knowingly to make any false or misleading statement of a material fact in any registration application or report filed with the Commission, or knowingly to omit in any application or report any material fact that is required to be stated therein. Notwithstanding the foregoing, in the case of any violation described in the foregoing sentence by a person who is an individual, the fine shall not be more than, $100,000, together with the costs of prosecution."

18. *See* note 4 *supra.*